WILLIS G. DURRELL, PLAINTIFF IN ERROR, v. JOHN H. HART, DEFENDANT IN ERROR.

1.  **Verdict**: EVIDENCE.  A verdict will not be set aside on the ground that it is against the weight of evidence, unless it is clearly wrong, and a mere difference of opinion between the jury and the court will not justify the latter in setting the verdict aside.

2.  ———: PRINCIPAL AND AGENT.  Where a joint verdict has been rendered against a principal and his agent, and the testimony fails to show the liability of such agent, the verdict may be set aside as to him and permitted to stand as to the principal.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Heiskell & Scott*, for plaintiff in error.

*Pound & Burr,* for defendant in error.

MAXWELL, J.

This action was brought by the defendant in error against the plaintiff in error to recover commission on the sale of lot 2, block 44, in the city of Lincoln. The amount claimed is $150. The defendant in error in his petition alleges that he sold the lot in question for $7,400, and that the plaintiff in error was to pay him the sum of $150. The plaintiff in error contends that he was to pay the defendant in error $150 in case he sold the lot for $7,500, and as he failed to sell the lot for a greater sum than $7,400, he was entitled to $50 commission, and no more. On the trial of the cause the jury returned a verdict in favor of Hart for the sum of $150, upon which judgment was rendered.

The principal objection is, that the verdict is against the weight of evidence. The defendant in error testifies that in December, 1886, he heard that the plaintiff in error was about to trade the lot in question. He further testifies:

"I heard of the trade; I was going to get at that to show what was done. I sent a man to tell them I would try to get them more for it if they did not make that trade. It stopped till February."

Q. What occurred then?

A. I went and asked if they wanted to sell the lot. He said they did. I asked him if he had power to sell the lot. He said he had; his brother had empowered him. I asked him what the price was then. He said $7,500, he wanted.

Q. By the court: When was this conversation?

A. That was in February.

Q. What part?

A. Somewhere along the latter part of February. He

said that he wanted to sell it and that was his price, $7,-500. I asked him if he wanted me to sell it for him. I took the sale of the property, and I went to see a man I thought I could sell it to; I had tálked with him before. I went and talked with him, and he offered me $7,400. I went back with—

Q.  Who was it offered you $7,400?

A.  Mr. Humphrey.

Q.  Austin?

A.  Austin. I went back to Harry Durrell and told him what Humphrey had said, that he would give $7,400. He made the remark that that was $100 less for the property than he wanted; "Besides," he said; "there will be your commission. What will that be?" I said, "I will be as reasonable as I can, as I sold your brother the lot I will make my commission $150; if you can afford to take $7,400 and pay me $150, I will go ahead; but be your own judge. I want you to be satisfied." He studied a little bit, and then said to me, "Try and get another $100. That will help to pay your commission." I said I did not think I could, but I would try and see if I could make it. Then he said, "If you cannot get the $7,500 I will take $7,400." There was nothing more said about the commission than that. I went and saw Mr. Humphrey, and he would not give more. I took Mr. Durrell, and went to Mr. Humphrey's, and Mr. Harry Durrell and Mr. Humphrey closed the trade that day.

On the part of the plaintiff in error, one Harry P. Durrell testifies:

" I acted as agent for W. G. Durrell in the sale of some property."

Q.  To what property do you refer?

A.  To lot No. 2, block 44, in the city of Lincoln, state of Nebraska, otherwise known as No. 141 N 9th street, in said city.

Q.  Now you may state what business transaction, if
any, you, as agent for said W. G. Durrell, had with the
plaintiff in this action, John H. Hart.   State all the facts
and circumstances of the transaction.

A.   I have had but one business transaction with the
plaintiff Hart, and this lawsuit grows out of that.   The
transaction came up in this way:   My brother, W. G.
Durrell, and I were engaged in business together at No.
141 N. 9th street, in Lincoln, Nebraska; our business
house was located on lot No. 2, block 44, in said city, which
lot was the property of the defendant, W. G. Durrell; in
the latter part of January or early part of February, 1887,
—I forget the exact date—W. G. Durrell started for Texas,
to be absent some weeks, and before starting he authorized
me to sell said property, viz., lot 2, block 44, for $7,350
net to him, or for a larger sum if I could obtain it.   On
or about February 22, 1887, this plaintiff, John H. Hart,
came into our office and asked me if I could sell that lot;
I told him yes; he asked me my price; I told him $7,500,
with $150 commission to him if he could sell it for that
price.   Hart said, "I do not believe I can get $7,500 for
it, but will go and see my man."   During the same day
Hart returned to our office and told me he could only get
an offer of $7,400, to which I replied, "I will accept
$7,400, but can only pay you $50 commission at that
price, as the property must net W. G. Durrell $7,350 above
commission."   Hart replied, saying, "I will try to get the
balance of my commission from the other party," and he
left the office again.   After awhile he returned and said,
"It is all right; I have sold the property to Mr. Hum-
phrey for $7,400."   Nothing further was said about com-
mission.   O. W. Humphrey came in, and we made out an
agreement for the transfer of the property on the following
terms:   Price, $7,400; cash, $100; note, $1,900, May 1,
1887; $1,400 March 1, 1888; and Humphrey to assume
$4,000 mortgage.   I made the sale, relying on the agree-

ment with Mr. Hart that his commission would be $50, which he agreed to.

This witness is corroborated to some extent by one G. I. Chowning, who testifies that he was present during the conversation between the witness Durrell and Hart. Mr. Chowning, however, states that the amount agreed upon for which Hart might sell the lot in question "was either $7,350 or $7,450, I would not be positive which, and I think, as near as my recollection is, it was $7,450 that W. G. Durrell was to have." From other portions of his testimony it is evident that this witness has no definite knowledge in regard to the final arrangement between Hart and Durrell, and but little weight can be given to his testimony.

The rule is, that a verdict will not be set aside as being against the weight of evidence unless it is clearly wrong, and a mere difference of opinion between the court and jury will not justify the former in setting the verdict aside. The verdict, therefore, will be sustained.

A joint verdict was rendered against W. G. Durrell and Harry P. Durrell, but on motion of Harry P. Durrell the verdict was set aside as to him. This, we think, was right. He was a mere agent of W. G. Durrell, and did not contract in his own behalf. Therefore there is no cause of action against him. Upon the whole case it is apparent that there is no error in the record, and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.